**1**

DISTRICT OF NEW JERSEY

IN RE:                          : Case No. 07-11757(KCF)
                                : Adv. No. 08-01201(KCF)
        SOLOMON DWEK, et al.,   : Trenton, New Jersey
                                : November 29, 2011
                Debtors         : 2:14 P.M.
-------------------------------
CHARLES A. STANZIALE, JR.,      :
CHAPTER 11 TRUSTEE FOR THE      :
ESTATES OF SOLOMON DWEK,        :
et al.,                         :
                                :
                Plaintiff,      :
                                :
        VS.                     :
                                :
BEAR STEARNS, INC., KENNETH     :
CAYRE, KLCC INVESTMENTS, LLC,   :
AND KLC FOUNDATION AND D AND D  :
TRUST,                          :
                Defendants.     :

            TRANSCRIPT OF MOTION HEARING
      BEFORE THE HONORABLE KATHRYN C. FERGUSON
          UNITED STATES BANKRUPTCY JUDGE




Audio Operator:     Geraldine Holley-Mack

Transcriber:        Isabel E. Cole
                    **COLE TRANSCRIPTION, L.L.C.**
                    **Certified Court Transcribers**
                    **P.O. BOX 1216**
                    **OCEAN GATE, NEW JERSEY 08740-1216**
                    **1-732-237-3200**


Proceedings were electronically recorded, transcript
produced by transcription.

**2**

APPEARANCES:

```
For the Debtor/:            Greenberg Traurig, L.L.P.
Plaintiff                   BY:  KEVIN D. FINGER, ESQ.
                                 DIANE VUOCOLO, ESQ.
                                 DAVID DeVITO, ESQ.
                            1001 Market Street -27th Floor
                            Philadelphia, PA 19103


For the Defendants:         Greenbaum, Rowe,
Cayre                       Smith & Davis, L.L.P.
                            BY:  DARREN C. BARREIRO, ESQ.
                            99 Wood Avenue South
                            Iselin, New Jersey 08830


For the Defendants:         Seyforth Shaw, L.L.P.
Cayre                       BY:  M. RYAN PINKSTON, ESQ.
                            131 South Dearborn Avenue
                            Suite 2400
                            Chicago, Illinois 60603
```

**Colloquy**                                    3

1        THE COURT:  Come on forward in <u>Stanziale v</u>

2   <u>Bear Sterns</u>.

3        Good afternoon, Counsel.  May I have your

4   appearances please.

5        MR. PINKSTON:  Good afternoon, Your Honor.

6        Ryan Pinkston, Seyforth Shaw, on behalf of

7   the Cayre Defendants.

8        THE COURT:  I'm sorry.  I didn't catch your

9   name.

10        MR. PINKSTON:  Ryan Pinkston.

11        MR. BARREIRO:  Darren Barreiro from Greenbaum

12   Rowe.

13        Mr. Pinkston is here under a <u>pro hac</u>.

14        MR. FINGER:  Good afternoon, Your Honor.

15        Kevin Finger of Greenberg Traurig along with

16   my colleagues, Diane Vuocolo and David DeVito, on

17   behalf of Plaintiff, Mr. Stanziale.

18        THE COURT:  Anybody else?  Okay.  Thank you.

19        This is a motion to -- well, the only one

20   that's contested is the motion to compel discovery

21   responses.  Anything to say about the motion to compel

22   compliance with the subpoena or the motion for leave to

23   conduct depositions?  Anybody have any comment on any

24   of that?

25        MR. BARREIRO:  I guess the only issue on, on

**Colloquy**                                          4

1   the motion to actually have the deposition happen, we

2   asked for it to happen here in, in the courthouse.

3               THE COURT:  Right.

4               MR. BARREIRO:  I think that would be more

5   convenient for all counsel and I put that in the order.

6   If Your Honor doesn't think that's appropriate we can

7   always go down to the penitentiary, but. . .

8               THE COURT:  Actually, I got an <u>ex parte</u> --

9   it's not here.  I don't know why.  I got an <u>ex parte</u>

10  letter from Mr. Dwek who says somehow that he's not

11  represented, which is not my understanding, but that

12  for security reasons he wants the deposition conducted

13  in Philadelphia.  Does anybody care about that?

14              MALE VOICE:  We'd agree with that, Your

15  Honor.

16              MR. BARREIRO:  We'll go down there.

17              THE COURT:  Okay.  All right.  I don't

18  remember what the order says.  Does the order

19  specifically say in the courthouse in Trenton or?

20              MR. BARREIRO:  Mine said that he'll be

21  produced here in Trenton so --

22              THE COURT:  If you could, if you could send

23  in another order that says that he should be produced,

24  and you can make arrangements with the marshals to have

25  the depositions conducted I think in the courthouse in

Colloquy/Decision/Motion - Finger                    5

1    Philadelphia.

2              MR. BARREIRO:  In Philadelphia, okay.

3              THE COURT:  Okay.  And the motion to compel

4    compliance with the subpoena I'm prepared to just grant

5    that unless anybody?

6              MR. BARREIRO:  No, that's, that's fine, Your

7    Honor.  Thank you.

8              THE COURT:  Okay.  Great.

9              All right.  On the motion to compel discovery

10   responses, I have on the Cayre entities' papers that

11   were filed on November 8th, Mr. Stanziale's

12   certification in opposition filed on November 22nd and

13   the Cayre Defendants' reply filed on November 25th.

14             I guess since the Trustee was the last, no,

15   the Cayre Defendants were the last to respond.  Why

16   don't you take it from, why don't you take it from

17   there, Mr. Finger.

18             MR. FINGER:  I'm sorry, Judge?

19             THE COURT:  You can pick up the argument that

20   was left off in the papers.  The last papers that I

21   have on this motion were filed by the Cayre Defendants.

22             MR. FINGER:  Yes, it's, they filed a reply.

23   It's their motion, Your Honor.  And the reply doesn't

24   really say anything different than what's in the

25   original motion for, to compel.  There are two basic

1    issues or two dividing lines.  One pertains to a, to

2    discovery sought on, on pre-petition activities, the

3    actual transfers at issue here versus post petition

4    activities of the Trustee.  And with respect to the,

5    the sole item that is pre-petition that has to do with

6    the transfers.  It has to do, that request has to do

7    with the Kenneth Cayre's status as an insider.

8         The Trustee has responded with very lengthy

9    responses and record citations in both the R.33 and

10   R.34 requests and it's, it's just to summarize, the

11   Defendants don't think that's sufficient, or doesn't,

12   it's not sufficient, in their view, to establish that.

13   The proper procedural mechanism, if that's their view,

14   is to file a motion for partial summary judgment on

15   that issue, which they've already done and withdrawn.

16        So the Trustee's position is we've answered

17   that as, as, in a very fulsome way and stand on those

18   answers.

19             THE COURT:  Okay.

20             MR. FINGER:  With respect to the post

21   petition activity, it's important to, to view the

22   situation from, you know, in the totality of the

23   circumstances.  Mr. Stanziale was appointed as trustee

24   for 81 different debtors, 80 of which are entities.

25   And for those post petition activities Mr. Stanziale

1    has the obligation to investigate all potential causes

2    of action on behalf of, of the estates and bring them

3    accordingly.  To date he has done significant activity

4    to bring dollars into the estate.  This adversary

5    proceeding is simply one of the causes of action

6    initiated by Mr. Stanziale in his role as trustee.

7    The, so the, what, this set of discovery requests have

8    absolutely nothing to do with the transfers at issue,

9    and, and to that end the Trustee has produced all

10   documents that it has.

11         In order to do these, to do his job, Mr.

12   Stanziale has, has, had to do a few things.  One is

13   there's one human being who, who, who has knowledge

14   regarding the 80 entities that are debtors in this

15   case, and that's Mr. Dwek, who has, has indeed provided

16   information to Mr. Stanziale and his counsel for not

17   only this cause of action but everything else that the

18   Trustee has done.

19         In addition, prior to the bankruptcy

20   petitions being filed, the FDA, FBI raided several

21   facilities and, and confiscated all the documents and

22   the Trustee has gone to the FBI data base, they've made

23   it available to him, and, and pulled out the documents

24   that relate to the duties that he has been charged by

25   this Court to discharge.  To the extent that those

1    documents relate in any way to this adversary

2    proceeding, they've been obtained by the Trustee from

3    the FBI and turned over.  So as part of, of the

4    Trustee's duties in dealing with Mr. Dwek, who has the

5    knowledge, he's also had some tangential interaction

6    with the U.S. Attorney's office and the FBI largely

7    through ministerial types of things.  Doesn't have any

8    FBI memorandum of interview for example.  It doesn't

9    have any recordings that were made by the FBI, that

10   sort of thing.  So against the Defendants' motion to

11   compel that is how the Trustee has gotten his

12   information.

13            The Trustee has, has, maintains the privilege

14   of the Debtors that were pre-petition, but also has a

15   privilege post petition regarding his investigation of

16   all the causes of actions that, that are necessary in

17   order to administer the estate including this one.  In

18   this way it's very similar to the Worldwide case that

19   comes from the District of South Carolina, Bankruptcy

20   Court in the District of South Carolina, because in

21   that case the former manager, for lack of a better

22   term, of the Debtors was, there were communications

23   between the Trustee and, and her counsel in order to

24   formulate causes of action.

25            In a very similar way, the Trustee and his

1    counsel in this case communicated with Mr. Dwek, who is

2    a former agent of the Debtors, but of those 80 debtor

3    entities Mr. Dwek was the person who had the personal

4    knowledge and was among the people that the Trustee

5    dealt with.  In, in that context, just as it was in

6    Worldwide, a privilege, a privilege applies.

7            THE COURT:  Well without reference to

8    Worldwide because I've read that case, what is it that

9    makes Mr. Dwek more than a really important witness?

10   What converts him into a client worthy of the attorney/

11   client privilege or in need of it?

12           MR. FINGER:  Well, what Worldwide does is it

13   applies --

14           THE COURT:  I asked you not reference

15   Worldwide.

16           MR. FINGER:  I understand.  Okay.

17           There are, there are several precedents

18   established by the Supreme Court that govern this.  It

19   includes the Weintraub case, the Upjohn case, Hickman

20   case.  All of these cases promulgated by the Supreme

21   Court establish an attorney/client privilege on behalf

22   of the corporation and then in those cases discuss the

23   realities of dealing with a corporation.  It's an

24   inanimate object.

25           So in this case what, what there is is,

1    there's a former agent, that's Mr. Dwek, who represents

2    those 80 entities, and that is the person that the

3    Trustee and his counsel communicated with in order to

4    gather the facts in this case, and that is the basis on

5    which the privilege is claimed.  So yes, Mr. Dwek is

6    also an important witness, but he's also the

7    representative of those debtor entities, and that's

8    where the privilege is established, and it's nothing

9    more than an application of established Supreme Court

10   precedent about those privileges.

11           THE COURT:  Okay.

12           MR. FINGER:  The other, there are a number of

13   items that, that, that Defendants ask for and many of

14   them have to deal with communications between Mr. Dwek

15   and, and the Trustee and his counsel.  The vast

16   overwhelming majority of those communications have

17   nothing to do with this adversary proceeding.  They,

18   they have to do with the administration of all the

19   other entities that are the subject of these bankruptcy

20   estates.  Those that do though are subject to that

21   claim of privilege, but most of them are, are not

22   relevant to this case.

23           Another, another example is a request for all

24   recordings that were made.  Well, there are 81 Section

25   341 meetings in which recordings were made.  Those

1  don't have anything to do with this adversary

2  proceeding.  So that's another example of the

3  overbreadth of those requests.

4  There are also requests that have to do, to

5  deal with payments that were made to Mr. Dwek and those

6  were made pursuant to an order by this Court and the

7  proper method to challenge that is, is by R.60 or some

8  other established rule of procedure that addresses

9  those types of issues that are already subject to a

10  court order.  It's not in the context of this adversary

11  proceeding and, moreover, nothing about those payments

12  has anything to do with this adversary proceeding.

13  THE COURT:  Thank you.

14  MR. FINGER:  Any questions from the Court

15  that I may address?

16  THE COURT:  Not right now.  Thank you.

17  MR. FINGER:  Thank you.

18  THE COURT:  Mr. Pinkston.

19  MR. PINKSTON:  Thank you, Your Honor.

20  I have a lot to say and I'll, I'll try not to

21  repeat what's in the papers.

22  I'll pick up on Mr. Finger's last point

23  first.  As far as with relevance in this proceeding,

24  first of all, it's beyond the Trustee's province to

25  decide what's relevant to a trial of these issues, and

1    even beyond that point credibility, as the authorities

2    set out in our reply, make clear it is always relevant.

3    And I don't, I don't know how otherwise to respond to a

4    statement that a witness being paid over $1 million by

5    the Plaintiffs in this action is not relevant to an

6    issue of credibility, both to the Trustees credibility

7    and to Mr. Dwek's credibility.

8            The fact that those payments were made

9    subject to this Court's order and that the Court

10   authorized those payments to be made says nothing about

11   the nature of the expense reimbursement; the types of

12   charges and receipts that Mr. Dwek was submitting; the

13   Trustee's due diligence in review of those receipts;

14   his decision to compensate Mr. Dwek for those.  Your

15   Honor already found earlier in the bankruptcy case that

16   some of those payments shouldn't have been made, to the

17   tune of $150,000.  We're entitled to investigate those

18   payments and the Trustee's review of those receipts and

19   the types of charges that Mr. Dwek was submitting.

20   He's a confessed liar and a confessed thief who we

21   believe has parlayed this bankruptcy case into a

22   perpetual income stream.

23           Those are facts that the jury is entitled to

24   hear and that we're entitled to present to a jury.  So

25   we're, we're not seeking to vacate your compensation.

1    So <u>R.</u>60, <u>R.</u>59 really have nothing to do with this

2    inquiry.  This goes to the heart of the Trustee's sole

3    witness in this proceeding.  We, we don't doubt that

4    the Trustee needed to communicate with Mr. Dwek to do

5    his job, but to do our job we're entitled to

6    investigate those communications.  He's not, he's not

7    Mr. Stanziale's client.  He's not Mr. Voucolo's client.

8    And this case is, is vastly different from the

9    <u>Worldwide Lumber</u> case.

10           In that instance you have a manager of a

11   corporate debtor who is speaking to Trustee's counsel

12   not the Trustee, and the Court basically makes the

13   finding that, that as a co, as co under <u>Weintraub</u> by

14   which the Trustee succeeds to management of the Debtor,

15   Mr. Stadelman in that case is essentially a co-manager.

16   And so if the Trustee's communication with this counsel

17   are privileged why wouldn't Stadelman's communications

18   be privileged.

19           That's not the case here, Your Honor, for,

20   for a couple reasons.  In <u>Worldwide Lumber</u> you had a

21   legitimate corporate entity.  Here, all of the

22   corporate entities were a sham.  They were set up to

23   perpetuate Mr. Dwek's fraud.  The Court already made a

24   finding on that issue when they substantively, when,

25   when Your Honor substantively consolidated the estates.

1    They are Mr. Dwek's alter egos.  That's a prerequisite

2    to finding substantive consolidation.  So we don't have

3    the corporate debtor here.

4            We don't have, we don't have the situation

5    that we had in <u>Worldwide Lumber</u>.  And more importantly,

6    <u>Weintraub</u>, <u>Upjohn</u> and <u>Hickman</u> do not stand for the

7    proposition that the Trustee's communications with the

8    Debtor are privileged.  What they say is, "A trustee

9    succeeds to the debtor's privilege for pre-petition

10   communications."

11           I'm sure as the Court knows, Mr. Stanziale

12   can waive Mr. Dwek's -- or maybe not Mr. Dwek's

13   privilege, a trustee can waive a legitimate corporate

14   debtor's privilege if he needs to in the investigation

15   and prosecution of avoidance claims and things of that

16   nature.  And the whole basis for that rule is to

17   prevent corporate from, officers of a corporation from

18   using attorney/client privilege to shield their pre-

19   petition illegal activity.  That's the whole basis of,

20   of the doctrine.  So the trustee stands in the shoes of

21   the debtor and can waive that privilege to pursue those

22   types of claims.

23           Here, we're not seeking pre-petition

24   communications between Mr. Dwek and his counsel.  We're

25   entitled to know what evidence the Trustee held on the

1    date he filed the complaint and what he's compiled

2    thereafter.  And those documents and those

3    communications between the Trustee and his counsel on

4    the one hand and Mr. Dwek and Mr. Dwek's professionals

5    on the other hand are undoubtedly relevant and

6    undoubtedly not privileged.

7              There cannot be an attorney/client privilege

8    here.  The bankruptcy code forbids it.  Mr. Stanziale

9    has to be a disinterested person in order to be

10   employed, to be appointed as a trustee.  The U.S.

11   Trustee appointed him under that provision.  I believe

12   it's Section 1104 of the bankruptcy code.  Ms. Voucolo

13   and her, her counsel, and her colleagues have the same

14   obligation to be a disinterested person.

15             So we, we have a lengthy bankruptcy case here

16   that's gone on for a number of years where the

17   Trustee's representing to the world that he's

18   disinterested and he's performing his duties under that

19   guise and now he comes forward and says, "I'm not

20   actually disinterested because this is my client.  Now,

21   I have a privilege."  He changes, he changes his, he

22   changes his, his approach when it suits him.  And

23   that's not, that's not a legitimate basis for finding

24   attorney/client privilege.

25             You know, and a finding like that from Your

1    Honor will have implications for, for future cases.

2    You'll have every trustee that stands before Your Honor

3    claiming that their communications with the Debtor are

4    privileged.  And there's, there's simply no basis in

5    the law for it.

6            I'd like to address the insider issue, if I

7    can.  The, the fact that we are unsatisfied with the

8    Trustee's evidentiary basis for his, his insider claims

9    at this point is a legitimate basis for summary

10   judgment.  And we filed a motion for partial summary

11   judgment on the issue and the Trustee opposed it with

12   two statements.  First, the Trustee told us that he

13   needed discovery in order to investigate the claims

14   further.  And second, for the first time, Mr. Dwek

15   comes forward and submits an affidavit to the Court

16   accusing our clients of money laundering, for the first

17   time.  That's two years after the case started.  No one

18   had heard of this money laundering accusation until

19   mid-October of 2010.

20           The, the timing is suspicious.  It comes

21   shortly after we file a motion to limit discovery and,

22   and Mr. Dwek catches wind of our pleading.  You know,

23   maybe in a communication between Mr. Dwek and the

24   Trustee, and then all of a sudden there's an affidavit

25   and, and gratuitous testimony in a proceeding before

1   Judge Linares of the district court about how, how

2   there was this scheme between Mr. Rosenberg, Mr. Geary

3   and Mr. Dwek many years before any of these pre-

4   petition transfers took place about money laundering.

5        Mr. Rosenberg has come forward and said he

6   doesn't know Mr. Geary.  He's never met or spoken with

7   him.  He was here last week and told you, by counsel

8   told Your Honor that.  And Your Honor's, Your Honor's

9   made a finding in your opinion cited in our brief,

10  Stanziale v Levi, that Mr. Dwek signed an, or verified

11  a complaint and then virtually negated every single one

12  of those verified allegations in deposition testimony.

13       So we, we think we're entitled to that

14  discovery about the origin of that affidavit, who

15  drafted it, the communications that went on around its

16  drafting, and the provenance of that document, and to

17  test those allegations.  It's, it's beyond me to think

18  that that's, that Mr. Dwek's credibility in a case like

19  this where we have a down investor who invested, who

20  lost $9 million and is being pursued by the Trustee as

21  if he received $30 million.  We think we're entitled to

22  that investigation.

23       And let me say also while I'm on this topic,

24  this is not a situation where Mr. Cayre received $30

25  million.  He received a payment.  He invested more.  He

1    received a payment.  He reinvested the principal.  This

2    is not the $30 million honeypot that the Trustee

3    portrays it to be.

4           There are a lot of, lot of other issues that

5    are going to be relevant at trial, Your Honor.  When

6    Mr. Dwek was arrested for car theft in Maryland and

7    remanded, when his bail was revoked and he was remanded

8    to custody, the Trustee sent a letter to Judge Linares

9    on his behalf.  The letter wasn't made of record.

10   We've been unable to obtain it from, from Judge

11   Linares.  But the Trustee conspicuously hasn't provided

12   it.  It's, it's undoubtedly relevant to the Trustee's

13   and Mr. Dwek's credibility.

14          Additionally, after Mr. Dwek was arrested, we

15   have reason to believe that the Trustee's, the Trustee

16   and his colleagues at McCarter & English were calling

17   around trying to find criminal counsel to represent

18   Dwek in connection with that matter.  I, it doesn't

19   make sense that an party to a lawsuit calling and

20   trying to find criminal counsel for one of their

21   witnesses is not relevant or it doesn't have any

22   bearing on the proceeding.  Those are facts that the

23   jury is entitled to learn when they weigh the evidence

24   in this case.  So we, we think the insider allegations

25   are so scant, Your Honor, that we'd actually ask that

1    this Court intervene and that the Trustee bring in

2    just, just ten, the ten hottest documents and bring

3    them into the Court and let Your Honor review then, and

4    then we can have a serious discussion about, about the

5    nature of the Trustee's allegations and whether he has

6    a legitimate basis to back up his accusations of money

7    laundering.

8          Mr. Dwek accused my clients of money

9    laundering.  The Trustee's has gone one step further in

10   his latest pleading and actually accused my colleague,

11   an attorney at my firm, of money laundering.  That's

12   something that not even Dwek was, was willing to say.

13   They said he was a co-facilitator.  We think that

14   really means co-conspirator, but they're, they're

15   wordsmithing so, so they're not actually accusing

16   someone of criminal wrongdoing.  It's inappropriate and

17   without, without an investigation, without evidence to

18   back it up that is not something that should ever be

19   put in a pleading and brought before this Court.

20         On, on the, on the point of Mr. Dwek's

21   credibility, I mentioned that Mr. Rosenberg has come

22   forward and disputed what Mr. Dwek put in his

23   affidavit.  I noted Your Honor's decision in which you

24   found that Mr. Dwek negated virtually every verified

25   allegation in the complaint.  We suspect, and we

1   suspect that there are more instances where Mr. Dwek

2   has lied or misled the Trustee.  And those go to the,

3   the heart of not only his character but to the heart of

4   the strength and the merit of the Trustee's allegations

5   in this case.  We're entitled to, to look at those

6   communications and those documents to, and compare that

7   to what's on record or what was testified at the 81

8   Section 341 meetings to see ways in which Mr. Dwek has

9   misled or lied to the Trustee in other instances and

10  what the Trustee's response to that was.

11          It, it can't be the case that the Trustee in

12  his investigation learns that Mr. Dwek is repeatedly

13  lying to him and does nothing about it and that doesn't

14  have some bearing on Mr. Dwek's truthfulness or the

15  Trustee's credibility when they testified to a jury in

16  this case.

17          Unless Your Honor has a question I think

18  that's all I have.

19          THE COURT:  No.  Thank you.

20          MR. PINKSTON:  Thank you.

21          THE COURT:  Anything else, Mr. Finger?

22          MR. FINGER:  Yes, Your Honor, thank you.

23          The Defendants have asked for very particular

24  grounds for relief, okay, and I would ask the Court to

25  hold them to that.  These other things that Mr.

1    Pinkston brought up today for the first time that I've

2    heard of about some letter to Judge Linares or some

3    other calling around for counsel is, for all I know

4    it's fabricated.  But it's not necessarily implicated

5    in the grounds for relief that, that are the subject of

6    this motion.  So there are some other inaccuracies too,

7    that I need to correct.

8         It is beyond dispute Mr. Dwek is not the

9    Trustee's client.  That is not the basis for, for the

10   establishment of an attorney/client privilege.  He is

11   the former agent of 80 debtor entities that are the

12   subject of these bankruptcy estates that the Trustee is

13   administering, and that's the basis for that, for that.

14   It's not, it is not the basis of a relationship where

15   Solomon Dwek, an individual, is a client and Mr.

16   Stanziale is a lawyer.

17        Also, the issue about Mr. Rosenberg stating

18   that he doesn't know Mr. Cayre, there are documents in

19   this production, indeed they're cited in the response

20   to the discovery requests about the insider status,

21   that are letters from Mr. Rosenberg to Mr. Cayre.  So

22   that is demonstrably false by the evidence that are in

23   the Trustee's production.  Those same documents are the

24   ones that Mr. Pinkston doesn't need the Court to do

25   anything.

1        In response 17 he's got all the documents

2    that relate to this.  Never mind the fact that Mr. Dwek

3    is married to a woman who's aunt is Mr. Cayre's wife.

4    And that's just an undisputed fact.  We can argue the

5    legal ramifications of that relationship, but that is

6    nonetheless a fact.  These -- so the Court need not

7    intervene with respect to insider sales because those

8    documents are, have been produced and are cited in the

9    record.

10        And finally, Your Honor, the talk of Mr.

11    Dwek's credibility certainly that's going to be at

12    issue here, but the fact of certain expenses being paid

13    have nothing to do with his credibility here.  In

14    reality, this case rises and falls on the documents

15    that are created.  And frankly, Mr. Cayre's explanation

16    for those documents, if and when he ever gets in the

17    witness chair, and this, this discovery (indiscernible)

18    really is simply delaying the, the inevitable, which is

19    depositions in this case, which are going to illuminate

20    a lot of these issues.  And, and frankly, from the

21    Trustee's perspective, the sooner we get to that the

22    better off everyone is in terms of prosecuting this

23    case.

24        Unless there are questions.

25        THE COURT:  No.  Thank you.

1    MR. PINKSTON:  Just a, just a few follow-ups,

2    Your Honor.

3         I'd like to direct Your Honor to page 16 of,

4    carries memorandum of law for a discussion about

5    Dwek's, a request the Trustee immediately produce all

6    communications and documentation regarding Dwek's

7    recent arrest; revocation of Dwek's bail in connection

8    with his alleged theft of a car; lying to the FBI and

9    filing a false affidavit; the Trustee's letter to Judge

10   Linares of the district court regarding the foregoing;

11   and, the Trustee's and/or his professionals recent

12   efforts to secure a criminal defense counsel for Dwek.

13   So to say that we haven't asked for those things that

14   are now before the Court is absurd, Your Honor, page 16

15   of the memorandum of law.

16        The next, the next point I want to make, Your

17   Honor, is that we have reason to believe, and we cited

18   it in our briefing on this issue that Mr. Stanziale

19   has, has informed the FBI that he thinks Dwek is a

20   pathological liar.  I, I can't think of anything else

21   that's more relevant than a plaintiff calling his star

22   witness a pathological liar.  That's something the jury

23   is entitled to hear and something we plan to, to

24   present to the jury at trial.  Note in the Trustee's

25   response he, he coyly responds that he has no document

1    reflecting such communications.  He doesn't deny that

2    he made the statement.  And he can answer, he can

3    answer those questions.

4         We believe, or we have reason to believe that

5    there are gonna be other instances where the Trustee

6    questioned Dwek's credibility in his communications

7    with the Debtor.  For example, Mr., Mr. Dwek submits an

8    expense receipt and the Trustee sends back an E-mail

9    that says, you know, these are hypothetical, Your

10   Honor, it says, "This charge doesn't look right.  I'm

11   not exactly sure," and then come to find out it wasn't

12   a legitimate charge.  That's something that bears on

13   both men's credibility and it's something that there's

14   no reason to exclude it in discovery.

15        Maybe, maybe it is or isn't relevant at

16   trial.  Maybe it is or is not admissible and something

17   that the jury gets to hear, but that's not Your

18   Honor's, that's not the question before Your Honor

19   today.  The question is:  Are we entitled to those

20   communications?

21        There's, there's no reason, there's no basis

22   in law to find that an attorney/client privilege exists

23   here.  We can say that Mr., Mr. Dwek was the agent of

24   the corporation, but we all know that's not true.  He

25   wasn't operating legitimate businesses.  In fact, the

1    Trustee has already conceded that these were all Mr.

2    Dwek's alter egos when he substantively consolidated

3    the estates before your court.  Now, he wants to take

4    the other position these were all different businesses,

5    none of it has anything to do with this case.  Your

6    Honor, it's simply, it's, it's too convenient to the

7    Trustee's case to hold water.

8             THE COURT:  Anything else?  Thank you.

9             MR. FINGER:  Your Honor, (indiscernible)

10   these were real entities with real assets that have

11   produced real sales (indiscernible).  So these

12   (indiscernible) entities are not (indiscernible)

13   somehow fictional is simply false.  That there are,

14   they are entities that held assets (indiscernible)

15   dealt with and dealt with his former agent on that.

16            THE COURT:  Okay.  Defendants Ken Cayre, KLCC

17   Investments, LLC and KLC Foundation are moving to

18   compel the Trustee to respond to their discovery

19   requests.  The Trustee filed certifications and a brief

20   in opposition on November 22nd and the Cayre Defendants

21   filed a response on November 25th.

22            The Court will first address the threshold

23   issue of relevancy.  R.26(b)(1) provides that,

24                 "Parties may obtain discovery regarding

25                 any non-privileged matter that is relevant to

**Decision**                                                    26

1      any party's claim or defense."

2      Courts have noted that,

3           "The precise boundaries of the R.26

4      relevance standard depend upon the context of

5      each particular action and determination of

6      relevance is within the Court's discretion."

7      That's from Graco v PMC Global, 2011 W.L.

8  1114233.

9           The context of this particular action is

10  crucial to the determination of relevance.  The Trustee

11  has admitted that in deciding to file this and other

12  adversary complaints he relied heavily on information

13  obtained from Solomon Dwek.  The Trustee has stated

14  numerous times that such reliance was necessary because

15  much of the Debtor's financial information was not

16  written down.

17           In opposition to this motion the Trustee

18  states that,

19           "Unraveling this colossal mess

20      necessarily required the assistance its chief

21      creator, Solomon Dwek."

22  This was the rationale proffered to the Court

23  to justify paying Mr. Dwek with estate funds.

24           So given that background it is difficult for

25  the Court to understand the Trustee's argument that

1    communications between Solomon Dwek and the Trustee and

2    his professionals are not relevant.  The Court is well

3    aware that this is only one of hundreds of adversary

4    complaints that were filed in these bankruptcy cases

5    and that many of the E-mails will relate to general

6    administrative matters as well; but, that does not mean

7    that all communications should be shielded from

8    discovery.  And contrary to the Trustee's position,

9    post petition communications are also relevant.

10            The Trustee's decision to file this adversary

11   complaint, his decision to oppose summary judgment and

12   to continue to litigate this case are all based, at

13   least in part, on information being fed to him from

14   Solomon Dwek.  That makes these post petition

15   communications relevant.  And it makes the statement

16   that the case will rise or fall on the documents seem

17   almost incomprehensible in the context of positions the

18   Trustee has taken throughout the case.

19                "It needs to be borne in mind that

20            courts have construed R.26 liberally creating

21            a broad range for discovery which would

22            encompass any matter that bears on or that

23            reasonably could lead to other matters that

24            could bear on any issue that is or may be in

25            the case."

**Decision**                                                    28

1          And that's from <u>Jones v DeRosa</u>, 238 F.R.D.

2     157.

3          The requested information certainly meets

4     that liberal standard.  The Court also wants to note

5     that how broadly or narrowly the Trustee construes the

6     discovery rules changes as suits him.  Just last week

7     the Trustee's counsel was arguing that requesting 15

8     years worth of discovery from a non-party, that is

9     Chasky Rosenberg, was defensible.  When wearing that

10    hat, the Trustee's counsel stated,

11               "Given the broad scope of the discovery

12               rules the Trustee respectfully submits that

13               at this stage tangential evidence relevance

14               is all that is required."

15          See <u>Hite v Peters</u>, 2009 W.L. 1748860, which

16    holds that,

17               "Relevancy is more broadly and liberally

18               construed at the discovery stage than at

19               trial."

20          Well, the same is true now that the Trustee

21    is on the other side of a motion to compel.

22    Accordingly, the Court finds that the requested

23    information meets the relevance threshold.

24          The next issue is whether even if relevant

25    the information should be shielded from disclosure

1   based on attorney/client privilege or the work product

2   doctrine.   The Court is amazed that the Trustee can

3   make this argument with a straight face.   Throughout

4   this bankruptcy case Solomon Dwek has been represented

5   by Tim Neumann.   At no point prior to this motion has

6   there been any suggestion that Charles Stanziale

7   represented Solomon Dwek.   It would seem fairly obvious

8   that such representation would violate the rules of

9   professional conduct because the interests of the

10  estate are frequently at direct odds with the interests

11  of Mr. Dwek.

12          That issue was explored by the bankruptcy

13  court in In Re:  Swanland, LLC, 2007 W.L. 4146680,

14  which explained,

15              "The role of a Chapter 11 trustee is to

16              act as a representative of the debtor's

17              bankruptcy estate not as representative of

18              the debtor.  Any attorney for the trustee

19              that might be appointed in these cases would

20              represent the trustee and would not represent

21              the debtors.  The fact that a debtor-in-

22              possession performs the duties of a trustee

23              pursuant to 11 U.S.C. Section 1107(a) and

24              1108 means little in the case of appointment

25              of a Chapter 11 trustee where the debtor-in-

1    possession has not been properly performing

2    those duties and is thus relieved of them.

3    "When a Chapter 11 trustee is appointed the

4    trustee and the debtor are not the same

5    party, nor do they necessarily share the same

6    interests.  In fact, the interests of a

7    Chapter 11 trustee and debtors are often in

8    opposition.  In such a case, if a conflict

9    were to arise, the appointed Chapter 11

10   trustee's loyalties are to the estate even if

11   they are in direct conflict with the wishes

12   of the debtor further establishing the need

13   for a separate counsel for the debtors."

14   And that's all a quote from that case.

15   That's a clear, that clear distinction

16   between the role of the trustee and the role of the

17   debtor is not obviated in this case because Mr.

18   Stanziale felt he needed Solomon Dwek's assistance.

19   The bankruptcy code itself provides at Section 521(3)

20   that,

21   "If a trustee is serving in the case the

22   debtor shall cooperate with the trustee as

23   necessary to enable the trustee to perform

24   the trustee's duties under this title."

25   The cases that the Trustee cites in support

1    of the notion that he may assert the attorney/client

2    privilege are thoroughly unpersuasive.  The Trustee

3    cites to <u>Commodity Futures Trading Commission v</u>

4    <u>Weintraub</u>, 471 U.S. 343, in which the Supreme Court

5    held that,

6              "A corporate debtor's attorney/client

7              privilege with respect to pre-petition

8              communication vests in the trustee upon his

9              appointment."

10    But that is a vastly different issue than

11    whether the post petition communications Charles

12    Stanziale and his professionals had with Solomon Dwek

13    are protected by the attorney/client privilege.

14         The primary case relied upon by the Trustee

15    is <u>Vieira v AGM II, L.L.C.</u>, or <u>In Re:  Worldwide</u>

16    <u>Wholesale Lumber</u>, 392 B.R. 197.  The <u>Vieira</u> court found

17    that,

18              "A trustee's right to assert the

19              attorney/client privilege as to post petition

20              communications is a logical extension of the

21              Supreme Court's holding in <u>Weintraub</u>."

22         The Court fails to see that logic.

23              "The pre-petition privilege is an asset

24              of the estate so that it makes sense that it

25              should be under the control of the Trustee.

**Decision**                                    32

1        But post petition communications should

2        follow the normal rules of privilege, and

3        chief among them is that the asserted holder

4        of the privilege is or sought to become a

5        client."

6        And you can see <u>Vermoni v Novanet Health</u>,

7    259 F.3d 284.

8        It is that very basic piece that's missing

9    here.  Also, even if this Court agreed with the

10   reasoning in <u>Vieira</u> its holding is much more limited

11   than the Trustee suggests.  In a footnote the <u>Vieira</u>

12   court states,

13        "The communications between Stadleman

14        and counsel for the Trustee regarding

15        Stadleman's post petition conduct and

16        knowledge he acquired when he was no longer

17        acting in the capacity of officer or director

18        of the debtor would not appear to be covered

19        by the attorney/client privilege."

20        And that's from the <u>Vieira</u> case at page 203

21   at note 6.

22        Here, the Debtor stopped acting in the

23   capacity of an officer or director of any of the

24   corporate debtors when the Chapter 11 Trustee was

25   appointed.  So virtually all of the communications at

1  issue here would not be covered by the attorney/client

2  privilege.  The Trustee's attempt to shield this

3  information on the basis of attorney/client privilege

4  is baseless.  Mr. Dwek is a witness.  He is not a

5  client.  He is not an agent.  The Trustee's client is

6  the estate.

7          The motion is granted.  The Court finds that

8  the information sought is relevant and that the

9  attorney/client privilege and work product doctrine do

10  not shield from disclosure communications between the

11  Trustee and his professionals and Mr. Dwek and his

12  professionals.

13          Thank you, Counsel.

14          MR. BARREIRO:  Thank you, Your Honor.

15          MR. PINKSTON:  Thank you, Your Honor.

16          MR. BARREIRO:  One matter of housekeeping,

17  Your Honor.  We have a December 1st discovery end.  I

18  know that we're going to be getting all these documents

19  and we had submitted a letter asking for an extension

20  of that jointly through the end of March I thought.  We

21  have a conference December 20th I think --

22          THE COURT:  Okay.

23          MR. BARREIRO:  -- where Your Honor's clerk

24  indicated we'd be talking about.  But given that we're

25  going to be getting these documents and then there's

**Decision**                                      34

1    some more motions I think on the next calendar we were

2    hoping to do depositions in this case end of January,

3    February and March.  But if we have this December 1st

4    deadline we're sort of all in a pickle.  So I wanted to

5    bring that --

6            THE COURT:  We're not going to extend this

7    till March.

8            MR. BARREIRO:  Okay.

9            THE COURT:  This case has been going on for a

10   long, long time.  I mean obviously, I'm not going to

11   hold anybody to a December 1st deadline, but you need

12   to reset your sights.

13           MR. BARREIRO:  Okay.

14           THE COURT:  Can I help you?  Did you have

15   anything to add?

16           MR. FINGER:  No, Your Honor.  We had

17   submitted the letter that, that was referred to so.

18           THE COURT:  Okay.  All right.  We'll have a

19   further discussion on the 20th, but I want you to think

20   a little bit more conservatively about what kind of,

21   what kind of extension I'm going to be willing to

22   grant.  Okay.

23           MR. BARREIRO:  Okay.  Thank you, Your Honor.

24           MR. FINGER:  Thank you, Your Honor.

25           THE COURT:  All right.  Thank you.

**Decision**                                                              35

1           (Recording off 2:53:52 - on at 2:53:56)

2           MR. FINGER:  Is the Court going to enter the

3      order or is it going to be circulated and submitted to

4      the Court?

5           THE COURT:  We, we got an order from you,

6      didn't we?

7           MR. FINGER:  We, we did submit an order.

8           THE COURT:  I think we'll probably just enter

9      that order.

10          MR. FINGER:  May I ask the Court's indulgence

11     of forestalling the entry of that order pending a

12     decision whether to, to appeal the bases because it's

13     an issue of privilege.  It involves, it is the basis

14     for an interlocutory appeal.  And I don't, I'm not

15     telling the Court that I'm going to file a Notice of

16     Appeal, but --

17          THE COURT:  You can file it or not, but you

18     have 14 days.  Why do I -- from the entry of the order.

19     Why would I delay the entry of the order just so that

20     you can consider an appeal?

21          MR. FINGER:  I don't want to be in that

22     period of time held in contempt of an order that says

23     any --

24          THE COURT:  Okay.  I will assure you I will

25     not hold you in contempt of that order during the

36

1    appeal period.

2              MR. FINGER:  Thank you, Your Honor.

3              THE COURT:  Okay.

4              (Adjourned 2:54 p.m.)

**I N D E X**

Motion by Mr. Finger            5

Response by Mr. Pinkston        11/23

Response by Mr. Finger          20/25

The Court:  Decision            5/25


CERTIFICATION:


    I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the
above-entitled matter.


/s/Isabel E. Cole
Isabel E. Cole
COLE TRANSCRIPTION, L.L.C.

Dated:  December 1, 2011